IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| LANNETT COMPANY, INC., *et al.*, | . | Case No. 23-10559 (JKS) |
| | . | (Jointly Administered) |
| Debtors. | . | |
| | . | May 24, 2023 |
| | . | 10:41 a.m. |

. . . . . . . . . . . . . . . . . . . . . .


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE


For The Debtors:          Fox Rothschild LLP
                          BY:  HOWARD A. COHEN, ESQ.
                          919 North Market Street, Suite 300
                          Wilmington, DE 19801
                          Telephone:  (302) 654-7444
                          Email:  hcohen@foxrothschild.com

                          Kirkland & Ellis LLP
                          BY:  NICOLE L. GREENBLATT, ESQ.
                          601 Lexington Avenue
                          New York, New York 10022
                          Telephone: (212) 446-4800
                          Email:  nicole.greenblatt@kirkland.com

For The Committee:        Womble Bond Dickinson
                          BY:  DONALD J. DETWEILER, ESQ.
                          1313 N. Market Street
                          Wilmington, DE 19801
                          Telephone:  (302) 252-4327
                          Email:  don.detweiler@wbd-us.com

Audio Operator:           ECRO


Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          (302)654-8080
                          Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

THE CLERK:  Counsel, you're live in the courtroom and the hearing is about to begin.  Please remember to state your name for the record when you speak and every time you speak.  Please stay muted if you're not speaking to the Judge so the Judge can concentrate on the parties that are presenting at the time.  Thank you.

THE COURT:  Good afternoon, this is Judge Stickles.  We're on the record in Lannett Company, Inc., Case No. 23-10559.

I've reviewed the debtors' motion to shorten with respect to the debtors' motion to disband the committee, and the objections filed by the United States Trustee and the creditors committee.  The motion to shorten is denied.

The purpose of this status conference is to address scheduling on the motion to disband the committee, and I'm curious if the parties have had an opportunity to confer regarding the schedule and the motion.

MR. COHEN:  Good afternoon, Your Honor, Howard Cohen, Fox Rothschild, counsel for the debtors.  I believe my co-counsel from Kirkland & Ellis is on the Zoom call, so I'll let them address the Court.  Thank you.

THE COURT:  Okay.  Thank you, Mr. Cohen.

MS. GREENBLATT:  Thank you, Your Honor.  Nicole Greenblatt on behalf of the debtors from Kirkland & Ellis.

THE COURT:  Good afternoon.

MS. GREENBLATT:  Your Honor, we did not know the motion to shorten would be denied, obviously, until we got on the status conference.  We have conferred with proposed counsel for the proposed committee; they asked us if we would withdraw the motion.  We have not had any further conversations around scheduling.  I'm happy to kind of lay out our case and give you some suggested ideas we've had on the side, but no, we have not conferred as a group.

THE COURT:  Okay.  Go ahead.

MS. GREENBLATT:  Thank you, Your Honor.  Look, I think we're obviously very concerned about timing.  As I said at the first day hearing, these cases were a long time coming and the prepackaged plan was pretty thoughtfully developed to maximize value.  We as the debtors are very cognizant of our fiduciary duties including to unsecured creditors and all stakeholders.  And we're not here to disenfranchise anyone, that is not what this motion to disband is about, nor is it what the motion to shorten was about.

To the contrary, we believe we have an absolute duty to keep these cases on track and on the full and fair timeline that Your Honor established on May 4th precisely so that we can deliver the value reflected in the plan which is again a full unimpaired recovery gifted to unsecured creditors by senior stakeholders who are taking a massive discount.

I think it's worth saying, Your Honor, that we're

equitizing approximately 570 million of senior secured debt in exchange for equity with a desk top value of approximately 283 million. And it shouldn't be lost on anyone that that gift in the plan is premised on certain timeline and budget for these cases, which again, are being financed exclusively by the use of the debtors' existing cash. This is not a case where we have a DIP with unfunded resources, unlimited resources.

So from our perspective, Your Honor, it's very hard to see a justification for the appointment of a creditors committee in these cases when again if there was any mystery value to be unlocked, we would first have to satisfy hundreds of millions of dollars of shortfall to senior secured creditors.

And so we felt compelled to move quickly because we don't have the luxury to sit idly by while a committee runs up costs and potentially threatens our timeline and budget and the successful outcome of these cases for what we see as no conceivable benefit to unsecured creditors.

The fact, Your Honor, is the only thing the committee can do and has stated its intention of doing is to slow these cases down which we fear jeopardizes recovery to unsecured creditors by depleting the value that's available to junior stakeholders, and really for the benefit of one party in interest which are the convertible noteholders.

And, Your Honor, I think courts will recognize that

funded debt holders like convertible noteholders are not typical unsecured creditors requiring a committee.  These are sophisticated parties with the means and ability to represent their own interests.  And in fact it's quite common for indentured trustees and their counsel to play a role in prepackaged cases outside of a formal committee role.

They had and have successfully negotiated settlements, and the bankruptcy code expressly provides a route for them to seek a substantial contribution claim to the extent that happens, so we see no harm to that one party of disbanding the committee and effectively what we have is a committee operating for the benefit of only one party.

Indeed, Your Honor, this is not a typical case where a committee comes in to improve recoveries to unsecured creditors.  They simply cannot do better than the unimpaired gift they're getting which is wrapped in a bow in a prepackaged plan where we gave every party in interest a full 35 days' notice of confirmation as required by the code and this district's local rules.  We have the requisite votes locked in and we stand ready for confirmation.

The pleadings suggest that this is not a true prepackaged case because 85 million of convertible debt is being wiped out on a non-consensual basis.  But the fact that it's a cramdown plan, Your Honor, does not make it not a prepack, does not make it non-confirmable and does not justify

the need for an unsecured creditors committee with costs to be borne by these estates.

THE COURT:  Okay.  Not to interrupt you, but we'll address that issue when we get to the motion to disband.  I'm curious what the parties propose in terms of the schedule because clearly I was not going to have a hearing on a motion to disband a committee in 24 hours.  So --

MS. GREENBLATT:  And so I think more to the point on timing, Your Honor, from our perspective, all the legal issues raised in the objections, the motion to shorten and the motion to disband, that we've seen so far relate to confirmation issues and to the cramdown plan.  These are issues of valuation, unfair discrimination, well settled issues in the Third Circuit that can and should be (indiscernible) confirmation and can easily be built into the schedule for the next two weeks.

And, Your Honor, we've seen the pleadings suggesting we're seeking extraordinary relief.  But you have to understand from our perspective, it was extraordinary and unexpected to have a committee appointed, and we found ourselves with a conundrum where if we put this motion on regular notice, it would be heard literally the same week as our confirmation hearing.  And so we asked for a shorten notice and disband the committee.  We agree to hold it into abeyance until after confirmation so that we could get through that.

On our end we've been talking about in the alternative, if Your Honor is not inclined to proceed on shortened notice, we think it might be appropriate and perhaps help impose some discipline on costs if we adjourn the motions to be heard simultaneously with confirmation. And so counsel on all sides including counsel for the indentured trustee and counsel for the committee, you know, be mindful of any, basically take some risks on whatever fees are imposed in driving litigation around this case given the facts and circumstances.

THE COURT: May I hear from proposed counsel for the committee?

MR. MYERS: Good afternoon, Your Honor. My name is Todd Myers, I apologize that it says my partner's name, Gianfranco Finizio, on the Zoom. I did not get the link for some reason so he sent it over to me. But speaking is Tom Myers.

Your Honor, I'm with Kilpatrick Townsend. Together with Womble, with the Womble firm, we are the proposed co-counsel to the Official Committee of Unsecured Creditors who were hired two days ago which I think was the day after the committee, or the first business day after the committee was formed. So obviously breathing by a firehouse.

Your Honor, I have a lot to say about in response to Ms. Greenblatt's arguments on the merits of the motion to

disband, but I'll take Your Honor's lead that we're not going to argue that right now, nor should we.

In respect of the timing for hearing this motion, it is the debtor, the movant's burden to show that the actions of the U.S. Trustee were arbitrary and capricious. I don't know what evidence that they intend to put on. They alleged in their papers that one of the committee members was appointed in respect of a $1500 trade debt. We believe that is preposterous that they were obviously appointed in their capacity as the indentured trustee for $80 million in notes. But if they intend to put on or make that argument, we would like to know what evidence they have of that.

So I'm a little uncertain of whether discovery is going to be needed on this. Perhaps with some stipulations we wouldn't need it hopefully. Next week is a holiday week. I'd be happy to have this heard the week after and we can brief it accordingly.

THE COURT: Bear with me a second. So are you proposing the week of June 5 for --

MR. MYERS: Yes, Your Honor, I think that's fine. But I fully expect that the committee is going to take the actions that a committee takes particularly in one where at least the purported timelines in this case is that confirmation hearing is in two and a half weeks. We're going to be, we're going to be doing what committees do until such time as we're

disbanded.

THE COURT:  Well, June 8th is the confirmation hearing.  So are you proposing that this be heard on the same day as the confirmation hearing?

MR. MYERS:  Assuming the confirmation hearing goes forward on June 8th.  I think, Your Honor, one of the first things the committee is going to do is ask Your Honor to reconsider the timeline.

You know, the mere fact that a debtor decides to solicit their plan the day before bankruptcy rather than, you know, a few weeks, a week or two into a bankruptcy, doesn't change the fact that when you have a class that's not only being impaired but is getting nothing, that that's not a true prepack and that that group of creditors and all creditors are entitled to the process of determining whether they truly are out of the money.  Just because Ms. Greenblatt says that, doesn't mean there's any evidence of that.

And so we believe that the creditors are entitled to, you know, full information and process regarding valuation, efforts to sell prior to the petition date, assets, assets at subs, assets at holdco, intercompany claims and determine whether or not the creditors are being treated appropriately under the plan.

So I think we're okay with it.  We are okay with the hearing on the motion to disband that week.  Frankly, we're

okay with the hearing on the motion to disband at the confirmation hearing, but we're not conceding that the confirmation hearing should be on the date that it's currently scheduled.

MR. BELLER:  Your Honor, may I be heard?

THE COURT:  Yes.

MR. BELLER:  Thank you.  Benjamin Beller from Sullivan and Cromwell on behalf of the contending stakeholders.

I understand Your Honor is not hearing arguments on the motion, but I want to point out, the way that we're talking about issues here I think makes very clear the concerns that the debtors and the contending stakeholders have about what's happening in the case which is that you're hearing about how delay of the timeline is in the interest of the committee and its constituents.  But it's not in the interest of the committee and its constituents; it's in the interest of the convertible noteholders.

And while they are a member of the committee, they are not unsecured creditors.  The unsecured creditors are being, the holders of general unsecured claims as defined in the plan are unimpaired.  The only interest that they have is that having that plan approved as quickly as possible.  So there is a serious concern from the debtors' side and from the contending stakeholders' side that there is a fundamental and irreconcilable conflict of interest between the members of the

committee and for the proposed counsel of the committee.

And to the extent that we're talking about discovery going forward, the debtors and the contending stakeholders will be evaluating discovery into the committee members, the formation of the committee and how the interest of the holders of general unsecured claims are in fact being represented by this purported committee.

And, again, I think it is clear for this deal that treats unsecured creditors other than the converters as unimpaired is premised on a specific timeline and on a specific budget.  We had many, many, many months of negotiations with the debtors.  We were evaluated whether in fact a plan that unimpairs holders of unsecured creditors was the best thing for the business going forward when we evaluated whether, what a plan that does not unimpair unsecured creditors looks like.  At the end of the day, our clients, along with the debtors, determine that a plan process that unimpairs holders of unsecured creditors despite the cost, despite the substantial haircut that the secured creditors are taking, was worthwhile, was the best thing for the business.

If the debtors are now required to bear the costs of a plan that does not unimpair those creditors, then we will have to evaluate whether we in fact should just be doing a plan that doesn't unimpair those creditors.  And that again is the fundamental conflict of interest that is at issue here.

And so we will get into it all whenever Your Honor decides to hear the motion.  I would be remiss to not point out that what we're hearing in this conference is exactly what we are concerned about.

MR. DETWEILER:  Your Honor, may it please the Court, Donald Detweiler from Womble Bond Dickinson on behalf of the Official Committee of Unsecured Creditors.  The issue in this whole issue really for the purposes of this conference call is to schedule a time for the motion to disband should the moving parties wish to move forward with it.

I think what you've heard from the committee despite all the discussions is we're prepared to have this within two weeks, and if it falls on the confirmation date, it will fall on the confirmation date.

What you also heard from Mr. Myers is the committee is prepared to file a motion asking Your Honor to reconsider her order with regard to the date of scheduling.  What I personally would suggest, and I think Mr. Myers would agree, is that we should go ahead and file that motion with the Court requesting Your Honor to reconsider the scheduling of the confirmation hearing.

In the meantime, it may be very well that we can keep the motion to disband again should moving parties wish to go forward with it on the date for the confirmation hearing, and then simultaneously Your Honor can consider hopefully before

the confirmation hearing date whether or not it's appropriate to extend the deadline.

But in the meantime, I can assure Mr. Beller and debtors' counsel that the members of the committee take fully all responsibility as fiduciaries of the estate, they understand their responsibility and they're moving forward as fiduciaries of the estate.

So for scheduling, why not put this on at the date for the confirmation hearing, hear the committee's motion to reconsider the timeline for the confirmation hearing?  That may move the confirmation hearing, but at least we have the motion to disband set for the Court.  The parties can brief the rather important issues that are raised by the motion and we move forward from there.  Thank you, Your Honor.

THE COURT:  Thank you.

Does anyone else wish to be heard?

Mr. Cudia?

MR. CUDIA:  Yes.  Good afternoon, Your Honor, Joseph Cudia for the United States Trustee.

The UST does not oppose June 8th as the date to hear the motion to disband the committee.  Our concern here is the weighty nature of what's going to be decided at that hearing. And in addition to time to brief it, I'm sure that anything filed in this case will require layers of review several steps above me.  So we do not oppose June 8th.

14

As far as our side, we don't anticipate the need for any discovery, but we do reserve our rights as to response to any request to discovery from the UST.

And that's all, Your Honor, unless you have other questions.

THE COURT:  I don't.  Does anyone else wish to be heard?

Okay.  I am going to schedule the motion to disband for June 8th at the same time we previously had the disclosure and confirmation hearing scheduled, which as of this time is still at the same time.

But I would ask the parties because it is an expedited proceeding, to confer in advance, confer who your witnesses are.  If there's anything to be produced, that you agree on a schedule because I don't want to be on the eve of the hearing on the motion to disband and be presented with issues regarding, you know, disclosure and delay.  So I would ask that the parties submit a scheduling order to the Court.

Is there anything further for today?

Okay, thank you all for jumping on a status conference so quickly.  We stand adjourned.

(Proceedings adjourned 11:00 a.m.)

* * * * *

15

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ Theresa Pullan                    May 25, 2023

Theresa Pullan, CET-780

Certified Court Transcriptionist

For Reliable